Thank you very much, Your Honor. Good morning. May it please the Court, my name is David Schlesinger. I represent the petitioner, Francisco Javier Flores Medina. Three years ago, this Court, in a memorandum of disposition, directed the Board of Immigration Appeals to reconsider Ms. Flores Medina's CAT claim, Human Torture Convention claim, based on her transgender identity. Unfortunately, in attempting to effectuate this Court's specific instructions regarding that particular claim and that particular basis for the claim, the BIA made three key errors, each of which we believe warrants a remand to the BIA for their proceedings. Now, the first such error we submit is that the BIA did not actually do a comprehensive analysis of Ms. Flores Medina's CAT claim based on her transgender identity, as this Court in Avendad Hernandez v. Lynch specifically directed. Counsel, isn't the question there whether the BIA adopted the reasoning of the IJ? The BIA, are you talking about the most recent order in this case, Your Honor? Correct. In other words, if the BIA adopts the IJ's ruling and it, in fact, considers the transgender nature of the petitioner here, then hasn't that satisfied the concern that you're raising? In theory it would, Your Honor, but we submit that that did not happen. There was no IJ's analysis. In fact, the only analysis regarding the CAT claim pertinent to Ms. Flores Medina's transgender identity occurs at A.R. 5 in the final paragraph, in which it basically said the respondent has not shown that such violence is so common throughout Mexico that it is more likely than not that she will personally experience it. Doesn't that start with his statement that the IJ did not clearly err when he found that? So we normally say that we don't require a specific statement, but if the BIA defers to the IJ's observations, or if we are required to look at both of them to understand the BIA's decision, that's sufficient. It's sufficient for this Court to understand what the BIA's reasoning was, Your Honor, but it's not sufficient to constitute an actual adoption of the IJ's reasoning. So here essentially the BIA was making a factual finding, and the third error, if I can get to that particular point at some point during my argument, is that the BIA's purported factual finding regarding Ms. Flores is ability to relocate to a safe part of Mexico where she would not... The BIA can't really make factual findings under its regulation, so isn't that why it said the IJ did not clearly err when he made this finding? It was essentially reviewing what it believed to be a finding of fact by the IJ, and so we would submit as our third, as what we believe to be the third error that the BIA committed, is that there is not... The substantial evidence does not support that finding, particularly in light of this Court's opinions in Avandano-Hernandez, Pringles-Rodriguez, Judge Smith's opinion for the Court in Hachihua-James. With Avandano and Hachihua, there was past torture, if I'm recalling correctly. Was there past torture here? I thought there was a... I thought our memo said, no past torture. What's the situation with that? It was not past torture in the sense of state actors committing torture against Ms. Flores Medina, Your Honor, but there were many instances of violence against her, including by classmates when she was identifying as a gay boy in her elementary school. She did have that encounter with police in Tijuana in 2010. She had... I thought we held that was not past torture. It was not... But the homosexuality, of course, was already determined by our memo, correct? Yeah, it was... We're only looking at transgender identity. We are, Your Honor, but I would point you to, in Hachihua-James, on page 1188, there's analysis regarding the entire past history of the petitioner in that case. And as you know, I know a lot about that case. Certainly, Your Honor. In that case, you clearly had official involvement. And what I'm troubled with here is, although there are a lot of sad and difficult circumstances that your client had as a younger person, had the encounter with the police, our prior panel concluded that the police beating in 2010 did not constitute past torture. And when he was a little, she was a little person, there was no police involvement there. So you don't have that official acquiescence component. So is it fair to say that there was no past torture as that term is understood in immigration law? I would say, Your Honor, it's correct that there was no past torture in the sense of a state actor perpetuating... That's a required element to find past torture, right? It's one of four factors. But as Your Honor noted in Hachihua-James, no one of the factors is determinative. So past torture is one of the factors, but also whether there were gross... Well, past torture is one of the factors. But I'm saying in order to get past torture, you have to have both the act of torture and state acquiescence to have past torture. The Hyman case, you're talking about past torture being one of the elements of the larger issue. But I'm just saying for purposes of our discussion, there was no past torture here, correct? Not past torture by a state actor, Your Honor. But with acquiescence of a state actor, right? Or by a state actor. That's correct. We acknowledge that, Your Honor. But there was violence that is against her and repeatedly committed that is pertinent, we believe, under the four factors in Hachihua-James, Avendado-Hernandez, even going as far back as Camalthus-Bienes. Since we're running out of time, I don't want to save it, Your Honor. If you want to save time, when you come back, will you address how we can apply the country conditions, as lamentable as they may be, how do we individualize them to your client's personal situation? Do you want to save the rest of your time and address that, or do you want to go right now? Given that my time is rapidly diminishing, I would prefer to address that on rebuttal, but I will certainly make a specific point of doing so, Your Honor. Thank you very much for that invitation. You're very welcome. Do you say it Heise? Is that correct? How do you say it? Heise? Okay. I apologize for the mispronunciation. Please proceed for the government. Good morning, Your Honors. May it please the Court, Michael Heise on behalf of the respondent, the Attorney General of the United States. Substantial evidence supports the agency's matter, primarily because Petitioner's Kett claim is unduly hypothetical. The linchpin of Petitioner's case is trying to avoid getting this Court to consider the immigration judge's decision in tandem with the Board's most recent decision. The Court was discussing that, and Petitioner's argument today is that there was no specific adoption. Now, the matter of Bourbonno is a very interesting case that's often used for efficiency purposes in immigration cases. Sometimes the Board will just only cite the matter of Bourbonno and then not do anything else, saying they adopted a firm. However, this Court has consistently recognized that the Court will either cite Bourbonno and then continue to engage in an additional analysis that the Court will then consider, or, as this Court cited, it's actually a case that Petitioner has previously cited in his, or excuse me, her original brief to this Court before the pre-readment, Medina Lara, where that was a situation in which the Court recognized that the Board was adopting, if not explicitly, but at a minimum affirming things that the immigration judge said, and that's without citing Bourbonno. That's 771 F3rd at 1111, and that's exactly what we have here. The Board, at Administrative Record page 5, states that, well, we will therefore affirm the immigration judge's decision with respect to the CAD analysis and cites the immigration judge's without a detailed CAD analysis by the Board. She therefore needs further analysis from the agency. However, the immigration judge's decision, again, the relevant pages are 54 to 58, is extensive and discusses this Court's precedent in Abandono-Hernandez, among others, and notes several key differences that are ultimately controlling here. As Your Honors were just discussing, the lack of past torture is critical here. This Court, the agency, both found that not only no past torture, but also no past persecution is a lower standard, and this new spin today, this is an unexhausted twist that the lack of a state actor is the past torture. That's a totality of the circumstances discussion. The harm itself, obviously, is a factor. The agency didn't even get to the point of a lack of a state actor because the actual harm suffered was not torture. Was it unfortunate? Was it violence? Absolutely, and is violence against the LGBT community an issue in Mexico? Has been for a very long time, but does discrimination rise to the level of persecution, let alone torture? No, it does not. Does the violence that some of the community endures rise to the level of torture? Perhaps, but as Your Honor was asking Judge Smith about how do we individualize the country conditions to this petitioner, and there's nothing in this evidence that suggests that petitioner has ever been singled out on account of her transgender identity, which is the main issue before the Court here. So opposing counsel relies on Hosseini for the proposition that country conditions alone can be enough under some circumstances. Are those circumstances pertinent here? No. Essentially, that line of reasoning would mean that identifying as a transgender individual would be an automatic ticket to cat protection, and that's simply not supported by the record in this case. Each case is a case-by-case analysis, and perhaps in certain conditions, I can't even think of a hypothetical that would fit, but if certain individuals were guaranteed to be tortured for any reason with state acquiescence, yes, and that's reflected in the country conditions evidence, that's certainly possible. That's something for the agency to decide in the first instance. The record here shows a bit of a mixed bag in terms of what is going on in Mexico. Yes, this Court's precedent suggests that conditions are less than ideal, and the government's not disputing that, but less than ideal is not enough to get one to cat protection because that is, torture is an extreme concept beyond persecution, and what we have here just doesn't get to that point. In fact, the latest country conditions discuss how conditions are improving. Ultimately, what Petitioner is asking the Court to do is, aside from ignoring the immigration judge, which the Court should not do, is to re-weigh the evidence that's been presented here. Petitioner could have offered additional evidence on remand, could have offered at least a brief on remand, didn't do so, and this Court decides immigration cases on the record before, that's by statute, and also this Court has long acknowledged that, and the record here shows no individualized threat to Petitioner. Let me ask you this, as you very well know, this case has gone back and forth like a ping pong ball between the IJ and the BIA and our Court. Is the BIA, and I suppose for that matter the IJ, deemed to have taken into consideration the previous iterations of the case, what was considered by our Court, for example, for example, our panel vowed that the past, the police beating and so on, did not amount to torture. Are we bound by that? Well, this Court, the prior panel of this Court in this case, and yes, it has gone back and forth quite a bit for several reasons, but in terms of, is the Court bound by prior findings, I would say that, yes, law of the case. Is it kind of a law of the case sort of thing? Yes, exactly, Your Honor. Are there other aspects of this case that the Government would contend are also law of the case? The lack of past torture, absolutely, and I would point out that the Court did not limit its decision, the prior decision here, to finding a lack of past torture for the lack of a state actor. It was that the harm did not rise to the level of torture. So the lack of past torture here, which this Court has consistently said is the principal factor, yes, there's several factors to consider, but the lack of past torture is the principal factor for the Court to consider and need to establish a particularized threat. There's also the hypothetical nature of Petitioner's claims, and again, the lack of anything singling this individual out. The Board's decision in matter of JFF explicitly discusses how a CAT claim cannot be based on a stringing together a series of hypothetical suppositions. Petitioner remarkably claimed in the reply brief that this Court has not endorsed a matter of JFF, and that's flatly not the case. I found at least 15 decisions, including one where Your Honor, Judge Smith, was on the panel, Medina-Rodriguez, from just last year, 979-F3-78. Matter of JFF really isn't in dispute in that regard because the burden of proof is on the Petitioner to establish eligibility for the relief sought, and that requires some suggestion of individualized risk. Now, the past experience Petitioner had, as this Court noted and the agency has repeatedly noted, the unfortunate incident outside of the nightclub was not past torture and was not past persecution, and in fact had nothing to do with Petitioner's transgender identity. Petitioner's own testimony suggested that it was because he was, quote, acting crazy in the streets as a result of mixing mental health medication and alcohol. So there's no suggestion that that was on account of transgender identity, homosexuality, anything of that nature. And yes, torture, the cap protection doesn't require an on-account-of analysis. Here we have to, it's not a requirement, but it's more likely than not facing torture, and there has to be a reason for it. So it doesn't necessarily have to be a protected ground, not that being transgender or homosexual would not necessarily constitute some kind of social group. What role does the existence of past torture or the lack thereof play into our analysis of whether it is more likely than not that the Petitioner here would suffer future torture? This Court has consistently said, including, Your Honor, in Sachihua, if I'm saying that correctly, I think we've all said it differently, Sachihua Jaime, that past torture is the, quote, primary indicator of the likelihood of future torture. So the absence of that here strongly cuts against Petitioner. I see I'm going over my time. Now, let me just ask my colleagues whether either has additional questions for the government. No, I do not. I do not, thank you. Very well. Thank you, Your Honor. Okay, Mr. Schlesinger, please. Thank you, Your Honor. Let me return back to the question that you had earlier posed to me, which is the application of country conditions to Ms. Flores Medina's particular situation. I suppose I should loop in as well this notion that my opponent has raised that essentially Ms. Flores Medina, in a vacuum, is asserting that she would be tortured on account of her transgender identity. She, unfortunately, has been a magnet for violence directed against her throughout her life. And a quote from Sachihua Jaime is on page 1188. The rapes Petitioner suffered as a child and teenager and her parents' reactions to those rapes ellipses demonstrate some likelihood that Petitioner is at risk of future torture, particularly in the form of sexual abuse based on her gender and sexual orientation. So it's an instance in which this court has considered past sexual violence or past violence against a petitioner, even if it wasn't by a state actor, to determine whether there would be a possibility of future torture. And I guess that's what I'm struggling with, Mr. Schlesinger, is that while I obviously believe and wrote that past torture, particularly accompanied by a state actor, is an indicator there is likely to be future torture. In this case, our court found that there was no past torture that meets the dual prong of the actual acts that constitute torture and official acquiescence. So in this case, we have that finding. And what I see you're being left with, in effect, is the very sad reality that transgender individuals are targets to some degree. But our case law, I believe, makes it clear that this has to be individualized. It can't be just a general countrywide situation. What's the best evidence that you have tied to the country conditions or anything else that you think we should look at for, if you will, the more likely than not standard that your client would be tortured in the future? Certainly, Your Honor. I think, if I may sum up, since I'm technically over time. Oh, you can answer my question. That's fine. Certainly, Your Honor. Thank you. I would refer to the court to the extensive country conditions analysis in Ovendada-Hernandez regarding the transgender community in Mexico. I'd refer to the court as well to the language I just quoted from Wachihua-Jaimes showing that any type of violence directed against a person, regardless of whether it is by a state actor or with the willful acquiescence of a state actor, is pertinent to the analysis. And then, of course, the other pertinent country conditions in Mexico regarding the impunity with which law enforcement and the military operate and the lack of adequate prosecution, if any, of these types of offenses. Most of them go completely uninvestigated and unprosecuted as subject case. All right. Let me ask my colleague whether either has additional questions for Justice Lessig. None. Thank you. All right. Thanks to both gentlemen for your argument. We appreciate it very much. The case of Flores-Medina v. Garland is submitted.
judges: M. Smith, Ikuta, Steele